1

2

3

4

5

6

7

8                              IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANTHONY F. HIGNITE,

11              Plaintiff,                         No. CIV S-07-0732 GEB DAD P

12        vs.

13   T. FELKER, et al.,                            FINDINGS & RECOMMENDATIONS

14              Defendants.

15   _____/

16              Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  Before the court is a motion to dismiss this action due to plaintiff's failure to

18   exhaust administrative remedies and failure to state a cognizable claim brought on behalf of

19   defendants Felker and Lewis.  Plaintiff has filed a timely opposition and defendants have filed a

20   timely reply.

21                                       **BACKGROUND**

22              In his complaint, plaintiff alleges as follows.  The prison staff at High Desert State

23   Prison (HDSP) searched his cell upon discovering that state-issued electric shavers or hair-

24   clippers had been tampered with.  During the search of plaintiff's cell, prison staff discovered

25   that the metal light fixture was missing a 9-1/2 inch long piece of metal.  After an unclothed body

26   search and the use of a hand held metal detector failed to detect contraband on plaintiff's person,

1

1   defendant Sergeant Lewis placed plaintiff on contraband watch.  Plaintiff asked for an x-ray to

2   establish that he was not hiding contraband, but defendant Lewis responded, "Your [sic] not

3   getting off that easy."  (Compl., Decl. at 1) (emphasis in original).  Instead of placing plaintiff in

4   Building A-5, which is the area usually used for contraband watch, defendant Lewis had plaintiff

5   placed in a "stripped cell" in the administrative segregation (adseg) unit where others could not

6   observe in order "to keep his retallitory [sic] and punitive actions against Plaintiff contained

7   within the Ad-Seg. unit, where he felt safe to commit the Constitutional violations described in

8   this complaint."  (Id. at 2.)  Plaintiff contends that the stripped cell did not have a mattress

9   (except for nine hours at night) or running water and that he was forced to eat his food with his

10   bare hands.  (Id. at 2-3.)  Plaintiff alleges that he was not allowed to wash his hands after

11   urination or bowel movements and that even his requests for a napkin or toilet paper to wipe

12   himself were denied.  (Id., Decl. Ex. 3.)  All regular hygienic activity (showering, brushing teeth,

13   etc.) was denied to him.  (Id.)  He contends that he was allowed only one small cup of water each

14   hour, if requested of staff.  (Id.)  In addition, plaintiff asserts that he was placed in boxer shorts

15   that had the waist and legs wrapped five times, then a full body jumpsuit that also had the waist

16   and legs taped five times.  (Compl., Decl at 3.)  Plaintiff claims he was also restrained the entire

17   time in waist chains with handcuffs and leg restraints.  (Id.)

18          Plaintiff alleges that was kept on a contraband watch from September 7, 2006 to

19   September 11, 2006, over 84 hours, even though such measures are by regulation to be limited to

20   72 hours or 3 bowel movements in duration.  (Id. at 3.)  Plaintiff also asserts that those same

21   regulations require that a prisoner placed on contraband watch be offered an x-ray or laxatives,

22   both of which he was denied when requested.  (Id.)  He claims that there was no evidence

23   indicating that he was involved in destroying or possessing state property and that he was denied

24   all procedures and procedural safeguards that are to accompany a contraband watch.  (Id. at 2-3.)

25          Plaintiff alleges that defendant Lewis did not have the authority to authorize the

26   contraband watch to which he was subjected.  (Id. at 2.)  Plaintiff has named Warden Felker as a

1  defendant in this action because he was aware of the incident in question and "is responsible by

2  Respondent [sic] Superior, in his capacity of Warden." (Id.)  Finally, plaintiff claims that as a

3  result of this treatment, his "Constitutional rights under the 8th Amendment to be free from

4  retalliation [sic] by state employees" were violated. (Id. at 4.)

5                                    **DEFENDANTS' MOTION TO DISMISS**

6                  Defendants have moved to dismiss this action under Rule 12(b) of the Federal

7  Rules of Civil Procedure due to plaintiff's alleged failure to exhaust his administrative remedies.

8  They also seek dismissal under Rule 12(b)(6), arguing that plaintiff has failed to state a

9  cognizable claim.

10  I.  Exhaustion of Administrative Remedies

11                  In a declaration attached to his complaint, plaintiff states that on September 17,

12  2006, he submitted a CDC 602 form to the Appeals Coordinator complaining of his treatment but

13  it "went unlogged, unanswered, and unacknowledged [sic]." (Compl., Decl. at 1.)  Plaintiff

14  declares that because of this refusal by prison officials to process his grievance, on September 24,

15  2006, he sent a copy of his original 602 appeal, a new 602 appeal form and a letter to the Director

16  of Corrections. (Id.)  In that letter, plaintiff provided the following explanation:

17                  On September 17, 2006 I sent a grievance to the Appeals
                Coordinator, and still have not received a response, and I'm
18              concerned for my meeting the current (15) day time-line, which is
                up on 9-26.  I am writing in response to if the Appeals Coordinator
19              does not comply or has never received the sent (602) that I have
                tried to exhaust my state remidies [sic] as well trying to follow
20              proper guide lines [sic], and time lines.  I have sent numerous
                requests to interviews, to the Appeals Coordinator in request for a
21              response to the (602) to as [sic] I make my dead line [sic].  The
                only other option I have is to write to you personally, and along
22              [sic] is a copy of the sent (602) that was to the Appeals
                Coordinator[] with this said It would be of much respect [sic] if I
23              could get a response to this issue, and excuse the interuption [sic]
                of your day.

24

25  (Compl., Decl. Ex. 1.)

26  /////

1       On December 15, 2006, the Chief of the Inmate Appeals Branch, responded to

2  plaintiff's letter to the Director as follows:

3          The enclosed documents are being returned to you for the
           following reasons:

4

5          This office provides the Director's Level Review of inmate/parolee
           appeals.  The form must be completed through the Second Level of
           Review on behalf of the Warden or Parole Region Administrator.

6          This appeal issue should be submitted directly to the Appeals
           Coordinator for review and appropriate action.

7

8  (Id., Decl. Ex. 3 at 1.)  Included with the returned documents was plaintiff's inmate/parolee

9  appeal form, dated September 24, 2006, in which he had requested the following action:

10         I would like to put an end to the cruel and unusual ways of "potty
           watch" and monetary compensation for my pain, suffering, and

11         humiliation caused by this traumatic experience, and will persue
           [sic] this through the federal courts if mediation does not occur,

12         due to violation of my Eighth Amendment Constitutional rights.

13  (Id., Decl. Ex. 3 at 5.)

14      A.  Defendants' Arguments

15       Defendants argue that plaintiff has failed to exhaust administrative remedies with

16  respect to his claim that the contraband watch he was subjected to violated his Eighth

17  Amendment rights because his appeal was never processed.  Defendants point to the declaration

18  of Appeals Coordinator Danette Jackson in which she states in part:

19         HDSP records indicate that inmate Hignite filed an appeal at the
           first level of review regarding his September 2006 placement on

20         Contraband Surveillance Watch.  His appeal, however, was
           screened-out as duplicative for failure to comply with the

21         regulations governing appeals: before filing the duplicative appeal
           inmate Hignite had submitted the same appeal to the Director's

22         level of review in Sacramento, California and a decision on that
           appeal was pending at the time of submission of the duplicate

23         appeal.  Accordingly, the duplicative appeal was screened-out and
           inmate Hignite was instructed to re-file his appeal after he received

24         the response from the Director's level of review.  The records
           indicate that inmate Hignite never refiled this appeal.

25

26  /////

4

1  (MTD, Ex. A, ¶ 5 at 2.)  Attached to Ms. Jackson's declaration is a computer print-out which

2  indicates that plaintiff sought a second level review of his grievance on October 25, 2006 and

3  that it was denied on December 8, 2006.  (Id., Ex. A-1.)  The print-out also lists "Screen Outs,"

4  but there is no indication that plaintiff submitted an administrative appeal which was screened

5  out as duplicative.

6         B.  Plaintiff's Opposition

7             Plaintiff contends that he attempted to follow the procedures for exhausting his

8  administrative remedies but that prison officials failed to respond to his grievances thereby

9  preventing him from filing an administrative appeal.  (Opp'n at 2.)  In this regard, plaintiff refers

10  the court to his declaration and supporting documents which were filed with his complaint.

11         C.  Defendants' Reply

12             Defendants assert that plaintiff has provided contradictory statements in his

13  opposition and complaint.  Defendants point out that in his opposition, plaintiff contends that

14  prison officials failed to respond to his informal request for resolution, but in his complaint he

15  contends that after he filed his grievance at the first-level, he filed a copy of the grievance at the

16  Director's level.  (Reply at 2.)  In addition, defendants argue that when plaintiff's appeal at the

17  Director's Level was denied, he was instructed to re-file his claim but that he has provided no

18  justification for his failure to do so.  (Id.)

19         D.  Analysis

20             As noted above, defendants have the burden of proving the absence of exhaustion

21  of administrative remedies.  The court finds that defendants have not met their burden.

22  Defendants contend that plaintiff's administrative appeal at the first level of review was

23  "screened out" as duplicative of an appeal that plaintiff had filed at the Director's level.

24  According to defendants, the proper procedure was for plaintiff to re-file his appeal at the first

25  level after he received a response at the Director's level.  The records presented by the parties to

26  this court, however, do not support defendants' contentions.

1          First, the print-out submitted by defendants from the administrative appeals

2   tracking system is missing critical dates and information.  For instance, although defendants

3   contend that plaintiff's first level appeal was "screened out" as duplicative, there is no notation of

4   such an action on the print-out, even though other notations on that document reflect other

5   appeals that were "screened out" by prison officials.

6          Second, the contention that plaintiff submitted a duplicative appeal is likewise not

7   supported by the evidence submitted by defendants.  Moreover, plaintiff has submitted a copy of

8   a letter and appeal form, both dated September 24, 2006, that were sent to the Director.  Plaintiff

9   explained in his letter that he was writing because he had not received a response to the grievance

10  that had been submitted to the Appeals Coordinator at High Desert State Prison.  Therein,

11  plaintiff also expressed concern about his filing deadline which was to  expire on September 26,

12  2006.  The letter and appeal form were returned to plaintiff with a letter from the Inmate Appeals

13  Branch, dated December 15, 2006.  Although defendants contend that plaintiff's first level

14  appeal was duplicative, it appears from the evidence before the court that plaintiff's first level

15  administrative appeal was submitted before plaintiff appealed to the Director.  If that is the case,

16  plaintiff's first level appeal was not duplicative as defendants claim.

17          In Woodford v. Ngo, 548 U.S. 81 (2006) the Supreme Court held that the PLRA

18  exhaustion requirement requires proper exhaustion, noting that a prisoner who does not wish to

19  participate in the prison's grievance system will have little incentive to comply with the

20  procedural rules of that system if there are no sanctions for failing to participate.  Here, however,

21  it appears that plaintiff sought to comply with the time requirements for submitting his

22  administrative appeal.  He has provided documents that support his contentions in this regard.

23  Plaintiff stated in his letter to the Director that he had made "numerous requests to [sic]

24  interviews, to the Appeals Coordinator in request for a response to the (602) to as [sic] I make

25  my dead line [sic]."  (Compl., Decl., Ex. 1.)  Although the print-out submitted by defendants

26  /////

1   shows that plaintiff submitted an appeal at the second level of review, defendants have provided

2   no explanation as to why the appeal was denied.

3           The court finds that defendants have failed to carry their burden of showing that

4   plaintiff failed to exhaust administrative remedies.  Accordingly, the defendants' motion to

5   dismiss plaintiff's Eighth Amendment claim as unexhausted should be denied.

6   II.  Failure to State a Claim

7           A.  Respondeat Superior Liability

8           Defendants next argue that defendant Felker is entitled to dismissal because there

9   is no respondeat superior liability under § 1983.  In addition, defendants argue that plaintiff's

10  bare allegations do not demonstrate that defendant Felker was responsible for setting in motion

11  the acts that serve as the basis of this action.  In his opposition, plaintiff argues that on September

12  8, 2006, defendant Felker issued a memorandum ordering that all facilities be locked down

13  because it was discovered that hair clippers had been tampered with and because metal was

14  removed from the light frame in a cell.  (Opp'n at 6; Compl. Ex. A-1.)

15          The court agrees with defendants that supervisory personnel are generally not

16  liable under § 1983 for the actions of their employees under a theory of respondeat superior and,

17  therefore, when a named defendant holds a supervisorial position, the causal link between him

18  and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607

19  F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  However,

20  here plaintiff has submitted exhibits with his opposition to the motion to dismiss establishing that

21  Warden Felker specifically authorized the look-down in connection with the investigation that

22  resulted in the incident about which plaintiff complains.  The court finds that plaintiff has

23  provided sufficient factual allegations as well as documentation with respect to the causal link

24  between defendant Felker and the alleged constitutional violation.  Therefore, the motion to

25  dismiss defendant Felker should be denied.

26  /////

1   B.   Retaliation Claim

2   Defendants argue that plaintiff has not alleged that he was retaliated against for

3   exercising his constitutional rights or that the allegedly retaliatory action taken against him did

4   not advance legitimate penological goals.  Plaintiff claims that when he was confronted by prison

5   staff regarding the tampered with electric shaver and told them that he had no knowledge about

6   it, they "laughed and mocked about what they were going to do in retaliation by placing plaintiff

7   on surveillance watch, even though negative results for the supposed 'metal' contraband where

8   [sic] not found on plaintiff . . . ."  (Opp'n at 3.)

9   "Within the prison context, a viable claim of First Amendment retaliation entails

10   five basic elements:  (1) An assertion that a state actor took some adverse action against an

11   inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

12   inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a

13   legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

14   Here, plaintiff does not alleged that the contraband watch was imposed upon him

15   because he engaged in some form protected conduct.  Instead, plaintiff contends that the

16   contraband watch was ordered because when prison staff questioned him, he denied knowing

17   anything about the shavers that had been tampered with.  Taken as true, this factual allegation is

18   insufficient to state a cognizable retaliation claim.  Therefore, the motion to dismiss plaintiff's

19   retaliation claim should be granted.

20   C.   Eighth Amendment Claim

21   Next, defendants argue that a contraband watch is a legitimate means of

22   determining if a prisoner is concealing contraband internally.  In this regard, defendants point to

23   the decision in Mendoza v. Blodgett, 960 F.2d 1425, 1430 (9th Cir. 1992), as upholding an

24   "extremely unpleasant" contraband surveillance watch.  Defendants contend plaintiff's

25   allegations that the surveillance took place in a different location than a normal contraband watch

26   and that it lasted eighty-four hours, fail to state a cognizable Eighth Amendment claim.  In this

1    regard, defendants argue that the lack of a mattress or running water during a contraband watch

2    does not constitute cruel and unusual punishment.  Defendants also argue that plaintiff has not

3    alleged any facts suggesting that defendant Felker was even aware that plaintiff had been placed

4    on contraband watch.  Defendants note that plaintiff has not alleged he suffered any actual injury

5    as a result of the surveillance.  Lastly, defendants argue that they are entitled to qualified

6    immunity with respect to this claim because plaintiff has not alleged facts that if proven would

7    establish a violation of any clearly established constitutional right.  Since a reasonable officer

8    could not have believed the contraband watch policy was unlawful, defendants contend that they

9    are entitled to qualified immunity with respect to this claim.

10           In his complaint and the attachments thereto, plaintiff alleges that the cell he was

11   placed in did not have a mattress or running water, that he had to eat with his bare hands, that the

12   clothing he was wearing was wrapped with tape at the legs and waist, and that even though he

13   was under constant surveillance he was kept in waist chains with handcuffs and leg restraints for

14   eighty-four hours.  He also alleges that he did not receive a medical evaluation either before or

15   after the surveillance watch.  In his opposition to the pending motion to dismiss, plaintiff argues

16   that during the contraband watch he was subjected to inhumane conditions of confinement and

17   that he was deprived of adequate living conditions and sanitation.

18           Prison officials have a duty to provide humane conditions of confinement;

19   officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and

20   must take reasonable measures to guarantee the safety of inmates.  Hudson v. Palmer, 468 U.S.

21   517, 526-27 (1984).  However, only "unnecessary and wanton infliction of pain" constitutes cruel

22   and unusual punishment forbidden by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312,

23   319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-

24   06 (1976).  "It is obduracy and wantonness, not inadvertence or error in good faith, that

25   characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  Whitley,

26   475 U.S. at 319.

1           "[A] prison official violates the Eighth Amendment only when two requirements

2    are met." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994).  "First, the deprivation alleged must be,

3    objectively, 'sufficiently serious.'"  <u>Id.</u> (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)).

4    Instructive here is a recent case in which a prisoner plaintiff alleged that his three-day detention

5    in a contraband watch cell violated his Eighth Amendment rights and the district court observed:

6               In determining whether a deprivation of a basic necessity is
           sufficiently serious to satisfy the objective component of an Eighth

7               Amendment claim, a court must consider the circumstances,
           nature, and duration of the deprivation.  The more basic the need,

8               the shorter the time it can be withheld.  Substantial deprivations of
           shelter, food, drinking water or sanitation for four days, for

9               example, are sufficiently serious to satisfy the objective component
           of an Eighth Amendment claim.

10

11   <u>Lira v. Cal. Dep't of Corrections</u>, No. C 07-1447 SI (pr), 2007 WL 2221019, *3 (N.D. Cal. July

12   31, 2007).  In that case, the district court ultimately concluded that the pro se plaintiff had

13   adequately pled an Eighth Amendment claim concerning his three-day detention on contraband

14   watch in a filthy cell based upon false evidence.  (<u>Id.</u>)

15          The second requirement for a cognizable Eighth Amendment claim, flowing from

16   the principle that only the unnecessary and wanton infliction of pain implicates the Eighth

17   Amendment, is a subjective one.  In prison-conditions cases, the required state of mind is

18   deliberate indifference to an inmate's health or safety.  <u>Farmer</u>, 511 U.S. at 832.

19          Here, plaintiff has alleged that even after a body search and a metal detector

20   indicated that he possessed no contraband on his person, he was placed on contraband watch in

21   an unauthorized fashion for an excessive 84 hours, was denied a mattress for much of that time

22   without running water, was forced to eat his food with his bare hands, was denied basic hygiene[1]

23   and adequate water and was restrained by multiple layers of tape, waist chains, handcuffs and leg

24   

---

25       [1] Indeed, plaintiff alleges that when he requested to shower or wash-up after more than
three days of confinement under such conditions, he was mocked and laughed at by correctional
26   officers.

1   restraints all without being allowed the alternatives provided for by prison regulations.

2   Construing the pro se complaint liberally as is required, the undersigned finds that plaintiff's

3   allegations are sufficient to state a cognizable Eighth Amendment claim.[2]

4           The court turns to defendants' motion to dismiss this claim on the basis of

5   qualified immunity.  "Government officials enjoy qualified immunity from civil damages unless

6   their conduct violates 'clearly established statutory or constitutional rights of which a reasonable

7   person would have known.'"  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting

8   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The threshold question for a court required to

9   rule on the qualified immunity issue is whether the facts alleged, taken in the light most favorable

10  to the plaintiff, demonstrate that the defendants' conduct violated a statutory or constitutional

11  right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If no such right would have been violated were

12  the plaintiff's allegations established, "there is no necessity for further inquiries concerning

13  qualified immunity."  Id.  If, on the other hand, a statutory or constitutional right is established by

14  the plaintiff's allegations, the court must inquire "whether the right was clearly established."  Id.

15  Accordingly, summary judgment based on qualified immunity is appropriate if the law did not

16  put the defendants on notice that their conduct would be clearly unlawful.  Id. at 202.

17          Because qualified immunity is an affirmative defense, the burden of proving the

18  defense lies with the official asserting it.  Harlow, 457 U.S. at 812; Houghton v. South, 965 F.2d

19  1532, 1536 (9th Cir. 1992); Benigni v. City of Hemet, 879 F.2d 473, 479 (9th Cir. 1989).  In

20  deciding whether the plaintiff's rights were clearly established at the time of an alleged violation,

21

22      [2]  The undersigned notes that in Mendoza v. Blodgett, 960 F.2d 1425 (9th Cir. 1992),
    relied upon by defendants, the court found that the prisoner plaintiff's procedural due process
23  rights were violated by a delay in receiving a hearing until five days after the end of a
    surveillance watch.  Id. at 1431.  The court concluded, however, that given the lack of case law
24  addressing the process due to an inmate prior to being placed on a contraband watch, the officers
    were entitled to qualified immunity with respect to plaintiff's due process claim.  Id.   Unlike the
25  case here, there was no Eighth Amendment claim before the court in Mendoza and the plaintiff in
    that case did not dispute the policy pursuant to which he was placed on contraband watch or the
26  actions undertaken in carrying out that policy.  Id. at 1430.

1   "[t]he proper inquiry focuses on whether 'it would be clear to a reasonable officer that his

2   conduct was unlawful in the situation he confronted' . . . or whether the state of the law in [the

3   relevant year] gave 'fair warning' to the officials that their conduct was unconstitutional."

4   Clement v. Gomez, 298 F.3d, 898, 906 (9th Cir. 2002) (citing Saucier, 533 U.S. at 202, and

5   quoting Hope v. Pelzer, 536 U.S. 730, 746 (2002)).  This inquiry must be undertaken in light of

6   the specific context of the case.  Saucier, 533 U.S. at 201.  Prison officials "'can still be on notice

7   that their conduct violates established law even in novel factual circumstances.'"  Clement, 298

8   F.3d at 906 (quoting Hope, 536 U.S. at 741).

9           Defendants argue that because no court has yet determined that the HDSP

10  contraband surveillance watch policy to be unconstitutional, they are entitled to qualified

11  immunity with respect to plaintiff's Eighth Amendment claim.  The argument misses the mark.

12  Plaintiff is not alleging that the HDSP contraband surveillance watch policy is unconstitutional.

13  He alleges that his Eighth Amendment right to be free from cruel and unusual punishment was

14  violated by the particular watch conditions he was subjected to under the circumstances of his

15  case.  He alleges that after an unclothed body search and the use of a hand held metal detector

16  failed to detect contraband on his person, there was not reasonable cause to subject him to the

17  contraband watch.  Moreover, he alleges that he was denied access to alternate means (x-ray or

18  use of a laxative) of establishing that he was not hiding contraband on his person.  Finally, he

19  alleges that he was subjected to inhumane conditions while on contraband watch, far in excess of

20  those authorized by the written HDSP contraband surveillance watch policy.[3]

21          The facts alleged here, taken in the light most favorable to the plaintiff, could

22  demonstrate that the defendants' conduct violated plaintiff's Eighth Amendment right to be free

23

24      [3] In opposition to the motion to dismiss, plaintiff has submitted both that written policy
   and Warden Felker's January 10, 2007 response to a letter received from the Prison Law Office
25  with respect to this incident in which the warden acknowledes that it was discovered that "not all
   of the policy protocols were adhered to" in plaintiff's case and that issues associated with the
26  policy had been addressed as a result.

1    from cruel and unusual punishment.  See Saucier, 533 U.S. at 201.  It cannot fairly be said under

2    these circumstances that defendants have satisfied their burden of establishing their entitlement

3    to the qualified immunity affirmative defense.  See Harlow, 457 U.S. at 812; Houghton, 965 F.2d

4    at 1536; Benigni, 879 F.2d at 479.

5                   For all of the reasons set forth above, the court will recommend that defendants'

6    motion to dismiss plaintiff's Eighth Amendment claim be denied.

7              D.  Failure to Follow HDSP Regulations

8                   Defendants argue that plaintiff cannot state a cognizable claim based on the

9    alleged failure of prison officials to follow HDSP's Surveillance Watch policy.[4]  They contend

10   that plaintiff's claims that contrary to regulations he was denied an x-ray or laxative before being

11   placed on surveillance, that the surveillance was conducted in a different cell location than was

12   normal and that the surveillance lasted eighty-four hours, do not state a cognizable claim because

13   the court lacks jurisdiction to hear a claim alleging violation of state regulations.

14                  Plaintiff asserts that he has referred to the prisons's contraband watch policy only

15   to demonstrate that it was not followed in his case.

16                  As indicated above, the court understood plaintiff's allegations in this regard as

17   merely supporting his Eighth Amendment claim that he was subjected to inhumane conditions of

18   confinement.  However, to the extent that plaintiff seeks to rely on the alleged violation of prison

19   regulations governing contraband surveillance watches as a stand alone claim, the court agrees

20   with defendants that the violation of such state prison regulations does not provide a basis for an

21   independent cause of action under § 1983.  Therefore, defendants' motion to dismiss any such

22   claim should be granted.

23   /////

24   /////

25

26       [4]  The Contraband Surveillance Watch Policy from HDSP's operations manual is attached
     to plaintiff's opposition as exhibit A.  (Doc. No. 22 at 16-21.)

**CONCLUSION**

1    In accordance with the above, IT IS HEREBY RECOMMENDED that:

2           1.  Defendants' October 16, 2007 motion to dismiss this action for failure to exhaust administrative remedies, be denied;

3           2.  Defendants' October 16, 2007 motion to dismiss defendant Felker be denied;

4           3.  Defendants' October 16, 2007 motion to dismiss plaintiff's Eighth Amendment claim be denied; and

5           4.  Defendants' October 16, 2007 motion to dismiss plaintiff's retaliation claim and any independent state law claim based on the HDSP contraband surveillance watch policy, be granted.

6    These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 11, 2008.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
hig0732.mtd

14