IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY F. HIGNITE,

        Plaintiff,           No. CV S-07-0732 DAD P

    vs.

T. FELKER, et al.,

        Defendants.      ORDER

_____/

       Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983.[1] The matter is before the court on defendants' motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed an opposition to the motion and defendants have filed a reply.

## BACKGROUND

       Plaintiff is proceeding on his original complaint. Therein, he alleges as follows. On September 7, 2006, while incarcerated at High Desert State Prison (HDSP), prison guards searched his cell after alleging that he had tampered with a state-issued electric shaver. As a

---

[1] Pursuant to consent of the parties filed February 9, 2009 (Doc. No. 43), February 12, 2009 (Doc. No. 44), and February 20, 2009 (Doc. No. 45), and pursuant to 28 U.S.C. § 636(c), this matter was assigned to a magistrate judge for all purposes. (Doc. No. 50.)

1

result of the search, guards discovered a piece of metal approximately nine and a half inches long missing from the light fixture in plaintiff's cell.  Plaintiff was then strip-searched and scanned with a handheld metal detector and no metal was found.  (Comp. at 4.)[2]

Plaintiff was then informed by defendant Lewis that he was being placed on "contraband watch" or "potty watch."  Plaintiff requested an x-ray in lieu of contraband watch, but defendant Lewis denied this request telling plaintiff, "your (sic) not getting off that easy."  (Id.) (emphasis in original).

Instead of placing plaintiff in Building A-5, the area typically used for contraband watch, defendant Lewis moved plaintiff to a "stripped" cell in the administrative segregation unit of the prison where defendant Lewis "felt safe" to take retaliatory and punitive actions against plaintiff.  (Id. at 5.)  Plaintiff states that, except for nine hours every night, the stripped cell had neither a mattress or running water.  Despite the lack of running water plaintiff was forced to eat his food with his bare hands.  (Id. at 5-6, 19.)

Plaintiff was dressed in state-issued boxer shorts that had the waist and legs taped closed five times, and then a full body jumpsuit that also had the waist and legs taped closed five times.  (Id. at 6.)  Plaintiff was restrained with waist chains, handcuffs and leg restraints.  (Id.)

After urination and bowel movements plaintiff was not allowed to wash his hands and his requests for a napkin or toilet paper to wipe himself with were denied.  (Id. at 18.)  During this contraband watch plaintiff was not allowed to shower or "wash-up."  (Id. at 19.)  Plaintiff had to request drinking water and was only granted one small cup per hour.  (Id. at 18.)

Plaintiff was kept on contraband watch for over 84 hours, from approximately 10 p.m. on September 7, 2006 to approximately 10 a.m. on September 11, 2006, despite prison regulations limiting the duration of such measures to 72 hours or 3 bowel movements on the part of the prisoner.  (Id. at 18-19.)  Those same regulations require that a prisoner under contraband

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by petitioner.

watch be offered the alternative of an x-ray or laxatives to speed up the three bowel movements, both of which plaintiff was denied when requested. (Id. at 6-7.) According to plaintiff there was no evidence indicating that he was involved in damaging or destroying state property and that he was denied all procedural safeguards that are to accompany the imposition of a contraband watch. (Id.)

Moreover, because defendant Lewis did not have the authority to authorize the contraband watch, plaintiff named Warden Felker as a defendant in this action because he was aware of the incident in question and "is responsible by Respondent [sic] Superior, in his capacity of Warden." (Id. at 5.)

Finally, plaintiff claims that as a result of this treatment, his "Constitutional rights under the 8th Amendment to be free from retaliation [sic] by state employees" were violated. (Id. at 7.)

PROCEDURAL HISTORY

On June 19, 2007, the court ordered the United States Marshal to serve plaintiff's complaint on defendants Lewis and Felker. On October 16, 2007, defendants moved to dismiss the entire action pursuant to non-enumerated Rule 12(b) due to plaintiff's alleged failure to exhaust his administrative remedies and under Rule 12(b)(6) due to plaintiff's alleged failure to state a claim upon which relief could be granted.

On July 14, 2008, the undersigned issued findings and recommendations, recommending that defendants' motion to dismiss be denied except as to plaintiff's retaliation claim and any independent state law claim based on HDSP's contraband watch policy. On August 22, 2008, the then-assigned district judge adopted those findings and recommendations in full. Defendant Felker filed an answer on August 29, 2008 and defendant Lewis filed an answer on October 9, 2008. On March 30, 2009, the undersigned issued a discovery order.

On October 22, 2009, counsel for defendant Felker filed a motion for summary judgment, arguing that defendant Felker was entitled to judgment in his favor because Felker had

no involvement in plaintiff's contraband watch.  (Doc. No. 58.)  On October 26, 2009, counsel for defendant Lewis filed an amended motion for summary judgment arguing that: (1) defendant Lewis' alleged actions did not rise to the level of a constitutional violation; and (2) defendant Lewis is entitled to qualified immunity.

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

4

establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U .S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## OTHER APPLICABLE LEGAL STANDARDS

### I. Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

### II. Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. AMEND. VIII. The "unnecessary and wanton infliction of pain"

6

constitutes cruel and unusual punishment prohibited by the United States Constitution. Whitley v. Albers, 475 U.S. 312, 319 (1986); see also Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 31 (1993). The Eighth Amendment imposes duties on prison officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 199-200 (1989); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).

To prevail on such a claim the plaintiff must show that objectively he suffered a "sufficiently serious" deprivation. Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). The plaintiff must also show that subjectively each defendant had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur. Farmer, 511 U.S. at 834. In this regard, a prison official violates the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. Under this standard, a prison official must have a "sufficiently culpable state of mind," one of deliberate indifference to the inmate's health or safety. Id.

III. Qualified Immunity

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable

7

1  person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting
2  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is presented with a qualified
3  immunity defense, the central questions for the court are (1) whether the facts alleged, taken in
4  the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a
5  statutory or constitutional right and (2) whether the right at issue was "clearly established."
6  Saucier v. Katz, 533 U.S. 194, 201 (2001).

7  Although the court was once required to answer these questions in order, the
8  United States Supreme Court has now held that "while the sequence set forth there is often
9  appropriate, it should no longer be regarded as mandatory."  Pearson v. Callahan, ___ U.S. ___,
10 ___, 129 S. Ct. 808, 818 (2009).  In this regard, if a court determines that a plaintiff's allegations
11 do not make out a statutory or constitutional violation, "there is no necessity for further inquiries
12 concerning qualified immunity."  Saucier, 533 U.S. at 201.  Likewise, if a court determines that
13 the right at issue was not clearly established at the time of the defendant's alleged misconduct,
14 the court may end further inquiries concerning qualified immunity at that point without
15 determining whether the allegations in fact make out a statutory or constitutional violation.
16 Pearson, 129 S. Ct. at 818-21.

17 In deciding whether the plaintiff's rights were clearly established, "[t]he proper
18 inquiry focuses on whether 'it would be clear to a reasonable officer that his conduct was
19 unlawful in the situation he confronted' . . . or whether the state of the law [at the relevant time]
20 gave 'fair warning' to the officials that their conduct was unconstitutional."  Clement v. Gomez,
21 298 F.3d 898, 906 (9th Cir. 2002) (quoting Saucier, 533 U.S. at 202).  The inquiry must be
22 undertaken in light of the specific context of the particular case.  Saucier, 533 U.S. at 201.
23 Because qualified immunity is an affirmative defense, the burden of proof initially lies with the
24 official asserting the defense.  Harlow, 457 U.S. at 812; Houghton v. South, 965 F.2d 1532, 1536
25 (9th Cir. 1992); Benigni v. City of Hemet, 879 F.2d 473, 479 (9th Cir. 1989).
26 /////

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I. <u>Defendants' Statement of Undisputed Facts and Evidence</u>

Defendants' statements of undisputed facts are supported by citations to the declarations of defendants Lewis and Felker executed under penalty of perjury as well as citations to plaintiff's deposition transcript.

The evidence submitted by the defendants establishes the following. In September of 2006, plaintiff was incarcerated at HDSP, defendant Lewis was employed as a prison guard with the rank of sergeant, and defendant Felker was the prison's acting warden. On September 7, 2006, prison guards reported to defendant Lewis that plaintiff had returned a state-issued electric shaver with a piece of metal missing. Defendant Lewis informed Supervising Lieutenant Van Leer of the report and Van Leer authorized plaintiff's cell in Administrative Segregation Unit Z to be searched. The search revealed that a piece of metal was also missing from the light fixture in plaintiff's cell. Guards also discovered a portion of concrete in plaintiff's cell with grooves consistent with the sharpening of a weapon. The prison's Chief Deputy Warden, Mike McDonald, placed Unit Z on lockdown so that other cells could be searched for the missing metal. (Def. Lewis' SUDF at 3, Dec. Lewis at 2-3, Def. Felker's SUDF at 1-2, Dec. Felker at 2.)

Lieutenant Van Leer and Captain T. Lyons then ordered plaintiff and his cellmate placed on contraband surveillance watch ("CSW"). Under HDSP's policy a CSW must be authorized by a lieutenant. A sergeant is not permitted to authorize a CSW. Defendant Lewis thereafter informed plaintiff that he was being placed on CSW. Defendant Lewis was present while other officers prepared plaintiff for the CSW. These preparations included dressing plaintiff in state-issued boxer shorts, the application of tape around the legs and waist, then dressing plaintiff in a jumpsuit with tape again applied around the legs and waist, and plaintiff finally being restrained with handcuffs, waist chains and leg restraints. (Def. Lewis' SUDF at 4, Dec. Lewis at 3.)

Defendant Lewis did not participate in plaintiff's CSW, which requires around-the-clock surveillance. Indeed, Lewis did not work at HDSP on September 8-10, 2006, and did not see plaintiff again until September 11, 2006, after the CSW had ended, when Lewis was working in a different part of the prison. Defendant Felker did not authorize the unit lockdown, did not authorize the CSW, and was not present during plaintiff's CSW. (Def. Lewis' SUDF at 4, Dec. Lewis at 3, Def. Felker's SUDF at 2, Dec. Felker at 2.)

II. Defendants' Arguments

Counsel for defendants argue that the defendants are entitled to summary judgment in their favor because Lewis and Felker were not involved in plaintiff's CSW. Counsel for defendant Lewis argues that even if plaintiff could prove that as a result of the CSW he suffered a sufficiently serious deprivation, he cannot proven that defendant Lewis acted with deliberate indifference to plaintiff's suffering because Lewis did not authorize the CSW and was not present for it. (Def. Lewis' Mem. of P. & A. at 9-11.) For this same reason, defense counsel argues that defendant Lewis is also entitled to qualified immunity. (Id. at 11-13.)

Likewise, counsel argues that defendant Felker is entitled to summary judgment because he had no involvement in the CSW. Defendant Felker argues that he did not authorize, and was not present for, the CSW. Defendant Felker notes that the evidence before the court establishes that he did not even authorize the unit lockdown following the discovery that metal was missing from the electric shaver and light fixture associated with plaintiff. (Def Felker's Mem. of P. & A. at 4.)

III. Plaintiff's Opposition

In his opposition to defendant Lewis' motion for summary judgment plaintiff concedes that Lewis did not authorize the CSW because Lewis did not have the necessary authority to do so. Moreover, plaintiff concedes that Lewis had "know (sic) knowledge of what took place during the CSW, as he did not conduct the around the clock surveillance." (Pl.'s Opp'n to Def. Lewis' Mot. for Summ. J. (Doc. No. 60) at 3-4, 7.)

10

However, plaintiff argues that the court's previous finding that plaintiff's complaint stated a cognizable claim for relief against Lewis rendered "plaintiff's wishes to name un-named correctional Captain and Lieutenant as stated in his complaint, void." (Id. at 4.) Plaintiff also contends that he was subjected to "very harsh conditions" while on CSW in violation of the HDSP's policy. Plaintiff alleges, without support, that defendant Lewis had "knowledge that plaintiff would endure such." (Id.) Plaintiff argues that it has "been clearly established that defendant Lewis had knowledge at the time plaintiff was placed on CSW" of the prison's CSW policy, "making him fully aware of the violations that occurred, or would occur, even before the watch was performed." (Id. at 8.)[3]

In his opposition to defendant Felker's motion for summary judgment, plaintiff argues that while it is "unfortunate that Chief Deputy Warden McDonald acted in bad faith by authorizing in Warden T. Felker's position as designee, and making him [liable] . . . . Felker should be held accountable." (Pl.'s Opp'n to Def. Felker's Mot. for Summ. J. (Doc. No. 61) at 8.) Plaintiff again recounts his living conditions while under the CSW, describing them as "very harsh and unusual" and "inhumane." (Id. at 1-2.) Plaintiff argues that even if it is true that defendant Felker did not authorize him being placed on CSW and was not present for it, that "does not make defendant Felker not liable or unaware of what took place on September 7, 2006." (Id. at 5.) Plaintiff explains that because these actions where authorized by McDonald, McDonald was doing so "in Felker's position as Warden." (Id.) In this regard, plaintiff has attached as exhibits to his opposition documents related to the lockdown in which McDonald has apparently "signed in the position of Warden T. Felker, even though McDonald's position for his signature is located directly above" Felker's.[4] (Id.) Plaintiff also argues, again without any

---

[3] In a somewhat contradictory argument, plaintiff also contends that "what the law requires is reasonably established" in HDSP's contraband watch policy. (Id. at 1-10.)

[4] Defendants object to the introduction of these documents on the grounds that they lack foundation, authenticity, relevancy and contain hearsay. ( Def. Lewis' Reply (Doc. No 64) at 3.)

11

evidentiary support, that "surely Felker was briefed on the situation before his designee choose to sign in his position." (Id. at 1-7.)

IV. Defendants' Reply

In reply, counsel for defendant Lewis argues that plaintiff has failed to comply with Federal Rules of Civil Procedure 56 and Local Rule 56-260(b) by not filing a response to defendants' statements of undisputed facts. Defendant Lewis also argues that plaintiff has failed to present evidence disputing the evidence offered by the defense that Lewis neither authorized or participated in the CSW. Lewis notes that the evidence before the court establishes that it was Captain T. Lyons who ordered that plaintiff be placed on CSW and that plaintiff admits that Lewis did not have knowledge of what took place during the CSW since Lewis was not part of the around-the-clock surveillance. (Def. Lewis' Reply at 1-2 (Doc. No. 62).)

Similarly, counsel for defendant Felker argues that plaintiff has provided no evidence to show that defendant Felker was involved in plaintiff's CSW and, because he cannot be found liable under respondeat superior, summary judgment should be entered in his favor. (Def. Felker's Reply (Doc. No. 63) at 2-3.)

ANALYSIS

I. Eighth Amendment

The court finds that defendants Lewis and Felker are entitled to summary judgment in their favor with respect to plaintiff's Eighth Amendment claim.

It is well settled that a prison official violates the Eighth Amendment when two criteria are met. First, a plaintiff's alleged deprivation must be sufficiently serious from an objective standpoint. Put another way, a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, a prison official must act, or fail to act, with "deliberate indifference" to a prisoner's health and safety. Id. at 834. In the prison context, "only unnecessary and wanton infliction of pain implicates the Eighth Amendment. Id. (citing

12

Wilson v. Seiter, 501 U.S. 294 (1991)).  Thus, a court can hold a prison official liable only if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.

Generally, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability under 42 U.S.C. § 1983.  Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989).  A supervisor may be liable under § 1983 only if there exists either "'(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991)  (quoting Hansen, 885 F.2d at 646 (emphasis added)).  See also Edgerly v. City and County of San Francisco, 599 F.3d 946, 961 (9th Cir. 2010); Mackinney v. Nielsen, 69 F.3d 1002, 1008 (9th Cir. 1995).

   A.   Defendant Lewis

Plaintiff argues that defendant Lewis "placed" plaintiff on CSW within the Administrative Segregation Unit, instead of the designated CSW location in building A-5. (Comp. at 5.)[5]  Plaintiff contends that placement on CSW in Administrative Segregation was a violation of the HDSP's contraband watch policy and that because defendant Lewis had knowledge of the prison's CSW policy that "it is obvious by him not following [that policy] . . . . the conduct was clearly unlawful."  (Pl.'s Opp'n to Def. Lewis' Mot. for Summ. J. at 7.)

It is undisputed, however, that defendant Lewis "could not order the CSW."  (Dec. Lewis at 3, Pl.'s Opp'n to Def. Lewis' Mot. for Summ. J. at 3.)  Indeed at his deposition, plaintiff conceded that he knew of no facts that would support an argument that defendant Lewis

/////

/////

---

   [5] Plaintiff has testified that building A-5 at HDSP has "adequate supplies" and "people that are trained on" CSW.  (Pl.'s Dep. at 15-16.)

13

authorized his placement on CSW. (Pl.'s Dep. at 15:6-8.)[6]  The undisputed evidence before the court also establishes that after observing plaintiff's preparation for the CSW, Lewis was not part of the around-the-clock surveillance of plaintiff while on contraband watch. (Dec. Lewis at 3, Pl.'s Opp'n to Def. Lewis' Mot. for Summ. J. at 7.)  Again, plaintiff acknowledged that this was the case at his deposition. (Pl.'s Dep. at 18:7-9.)

It was during the CSW that plaintiff alleges he was subject to inhumane conditions that resulted in a sufficiently serious deprivation that his rights under the Eighth Amendment rights were violated.  There is no factual dispute, however, as to whether defendant Lewis authorized or participated in the CSW.  The undisputed evidence before the court establishes that he did not and plaintiff does not contest this fact.  Thus, even assuming plaintiff could prove that he suffered a sufficiently serious deprivation as a result of his placement on CSW, there is no evidence to support an argument that defendant Lewis knew of and disregarded any excessive risk to plaintiff's health or safety as a result of the contraband watch.

Plaintiff concedes this conclusion but has nonetheless chosen to pursue his claim against defendant Lewis, purportedly based on his interpretation of this court's May 21, 2007 screening order.  In this regard, plaintiff states:

> Defendant contends that his facts are undisputed within the motion for summary judgment.  Only the deposition of plaintiff transcripts, and in support, declaration of defendant J. Lewis are being used, they are incomplete and for the most part irrelevant, not facts to support a summary judgment wishes.  Plaintiff never stated that defendant Lewis authorized the CSW as defendants state in his motion for summary judgment, but attempted to name the authorizer (sic) upon discovery. [] Plaintiff only knew on

---

[6]  Plaintiff claims that he never received the notice of taking his deposition. (Pl.'s Opp'n to Def. Felker's Mot. for Summ. J. at 9.)  As a result, he requests that the court impose sanctions against defendants, deny their motions for summary judgment, and disallow the use of his deposition transcript. (Id.)  Counsel for defendant Felker declares, under penalty of perjury, that she noticed plaintiff's deposition twenty-seven days in advance of the deposition and has provided the court with a copy of that deposition notice. (Def. Felker's Reply at 5-10.)  Moreover, even without plaintiff's deposition, defendants' would still be entitled to summary judgment since plaintiff has failed to present any evidence of a material factual dispute preventing the entry of judgment as a matter of law in favor of defendants.

> September 7, 2006, what was stated to him from J. Lewis on that day and that was, he was placing plaintiff on CSW and would be released from the watch after three "complete" bowel movements. [] Plaintiff would like to add in his complaint filed April 18, 2007 he had attempted to name along with defendants T. Felker and J. Lewis, un-named correctional captain, and Lieutenant at HDSP, because plaintiff indeed had knowledge that Sergeant J. Lewis could not order the CSW. [] Upon filing of this complaint the [court] determined that plaintiff's complaint states cognizable claims for relief against defendants Warden T. Felker and Correctional Sergeant J. Lewis and was appropriately (sic) to be named, leaving plaintiff's wishes to name un-named correctional Captain and Lieutenant as stated in his complaint, void.

(Pl.'s Opp'n to Def. Lewis' Mot. for Summ. J. at 4) (citations omitted).

Plaintiff's reliance on the court's screening order as a basis for opposing defendants' motions for summary judgment is misplaced. The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief *may* be granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2) (emphasis added). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an *indisputably meritless* legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327 (emphasis added). The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

Rule 8(a) (2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

1       This court's May 21, 2007, finding that "[p]laintiff's complaint appear[ed] to state cognizable claims for relief," and that service of his complaint on defendants Lewis and Felker was appropriate did not mean that plaintiff's claims were therefore per se meritorious or immune from summary judgment. Indeed, after adequate time for the parties to conduct discovery has lapsed, and a party has moved for summary judgment, this court must review any such motion to determine if summary judgment is proper. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322. "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party if entitled to judgement as a matter of law." Celotex, 477 U.S. at 322.

        Here, after reviewing "the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits" it is clear that there is no genuine issue as to any material fact with respect to defendant Lewis' actions.[7] Plaintiff has failed to establish a factual dispute as to whether Lewis engaged in an affirmative act, participated in another's affirmative act or omitted to perform an act which he was legally required to perform. Moreover plaintiff has failed to establish the existence of a factual dispute as to whether defendant Lewis knew of and disregarded an excessive risk to plaintiff's health or safety. Both plaintiff and Lewis agree that defendant Lewis did not do so. Lewis is therefore entitled to judgement in his favor as a matter of law as to plaintiff's Eighth Amendment claim.

/////

---

[7] Plaintiff's argument that this court's recognition of potentially cognizable claims against defendants Lewis and Felker rendered his naming of additional defendants "void," is also in error. Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend his pleading "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). Once a party has been served with a responsive pleading, the party may amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). Rule 15 provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a) (2). Plaintiff clearly had the opportunity to and yet never requested leave of court to amend his pleading to name any additional defendants.

Moreover, even if plaintiff had established the existence of a disputed issue of material fact with respect to Lewis' involvement in the CSW of plaintiff, defendant Lewis would nevertheless be entitled to qualified immunity if a reasonable officer in that particular factual situation could have believed his conduct was lawful. See Inouye v. Kemma, 504 F.3d 705, 712 (9th Cir. 2007). "Determining whether a public official is entitled to qualified immunity 'requires a two-part inquiry: (1) Was the law governing the state official's conduct clearly established? (2) Under that law could a reasonable state official have believed his conduct was lawful?' " Jeffers, 267 F.3d at 910 (citing Browning v. Vernon, 44 F.3d 818, 822 (9th Cir. 1995)).

Here the parties agree that Lewis relayed a report that plaintiff was implicated in a case of missing metal to the supervising lieutenant. The lieutenant and captain ordered plaintiff placed on CSW. Defendant Lewis informed plaintiff of that order and observed plaintiff's preparation for CSW. Lewis had no further involvement in the CSW of plaintiff. A reasonable state official in Lewis' position could clearly have believed his conduct was lawful. Thus, defendant Lewis would in any event be entitled to summary judgment in his favor on qualified immunity grounds.

B. Defendant Felker

The court also finds that defendant Felker is entitled to summary judgment in his favor with respect to plaintiff's Eighth Amendment claim. In his complaint, plaintiff merely alleges that Felker is responsible "by Respondent (sic) Superior, in his capacity of Warden." (Comp. at 5.) As noted above however a supervisor may be liable under § 1983 only where the supervisor was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation. Edgerly, 599 F.3d at 961; Redman, 942 F.2d at 1446.

At his deposition plaintiff acknowledged that defendant Warden Felker was not present at any time during the CSW and that plaintiff had no evidence that defendant Felker was

responsible for his placement on CSW, aside from a letter written by Felker after the CSW stating that "it did happen, but he did not know why it happened." (Pl.'s Dep. at 22-23.) Plaintiff also stated he initially believed defendant Felker "had to sign off on it" but after plaintiff "studied in the discovery that he may not have" plaintiff learned that the Assistant Warden may have instead signed "in his position." (Pl.'s Dep. at 22:11-21.)

Plaintiff argues in his opposition to defendant Felker's motion for summary judgment that just because a Deputy Warden authorized the lockdown, and that Felker "was not present or involved in" the CSW "does not make defendant Felker not liable or unaware of what took place." (Pl.'s Opp'n to Def. Felker's Mot. for Summ. J. at 4-5.) Plaintiff claims that Deputy Warden McDonald was "authorizing in Felker's position as Warden" and "by doing so does not relieve Felker of this situation but is solely responsible for . . . McDonald's actions in this case." (Id. at 5.)

The fact remains that plaintiff has failed to point to any evidence before the court of defendant Felker's involvement in plaintiff's placement on CSW. See Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (the nonmoving party has the burden of identifying, with reasonable particularity, the evidence precluding summary judgment). Indeed, the undisputed evidence before the court establishes that defendant Felker played no role in plaintiff's placement on contraband watch or in how that CSW was carried out. Plaintiff has therefore failed to show the existence of a factual dispute as to whether defendant Felker was personally involved in the alleged constitutional deprivation or whether there is a sufficient causal connection between Felker's conduct and the alleged constitutional violation. Because plaintiff has failed to meet his burden in this regard, defendant Felker is entitled to a judgment in his favor.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. The amended motion for summary judgment filed on behalf of defendant Lewis on October 26, 2009, (Doc. No. 59) is granted in its entirety as to all remaining claims;

1     2.  The motion for summary judgment filed on behalf of defendant Felker on
2 October 22, 2009, (Doc. No 58) is granted in its entirety as to all remaining claims; and
3     3.  This action is closed.
4 DATED: July 12, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD: 6
hignite732msj